Case number 23-3866, James Morgan v. DS Smith Holdings Inc, et al. Oral argument not to exceed 15 minutes per side. George Rule for the appellant. You may proceed. Morning. Morning. George Rule on behalf of the plaintiff appellant Jim Morgan. I'd like to reserve three minutes of my time for rebuttal. We're here today because the district court improperly granted summary judgment in favor of the employer in this case. We believe the court failed to give Mr. Morgan the benefit of reasonable inferences from the evidence and failed to view that evidence in the light most favorable to Mr. Morgan. I want to first talk about the pretext inquiry on the age discrimination claim. The standard in the Sixth Circuit is that Mr. Morgan is required to rebut but not disprove the articulated reason for termination. It's a common sense inquiry. Did Interstate fire Mr. Morgan for the stated reason or not? At the summary judgment stage, it's not a heavy burden. He just has to produce enough evidence to create a jury question. What's your theory of pretext that the company wasn't having a hard time? So in terms of the financial performance, Mr. Morgan is not arguing that it's factually false, that it wasn't a difficult economic period. His first two years as CEO, the performance was good. But also in terms of the issue with respect to the financial performance was whether Morgan could be held responsible for that and whether that actually motivated the decision. Because there's a lot of evidence in the record where the jury could reject the idea that Mr. Roberts fired Mr. Morgan because they didn't meet financials. For example, the fact that Mr. Morgan got a bonus in July of 2019. The public statements from Mr. Roberts that the North American business we acquired in 2017 continues to perform well. That was a statement he made in July of 2019. He also had discretion not to award him a bonus for the performance. But a really important piece of pretext evidence in this case is Mr. Roberts' hand-drawn organization chart in May of 2019. The district court in its decision denying summary judgment said that chart does not show that Mr. Roberts intended to fire Mr. Morgan. That's impermissibly weighing the evidence. It's not just the chart itself. First of all, the chart lists a now. Did you put the chart in or did they put the chart in? We put the chart in. Okay. It's a hand-drawn chart that Mr. Roberts sent to the younger replacement, Mr. Jacobson, that he wanted to fill this position. Some of the chart had the now organization, had Jim Morgan at the top as the managing director, and then it had the future organization drawn. Conspicuously, Mr. Morgan wasn't listed. It's not just the chart itself. You could argue, well, he decided not to include him in the future organization. It's exactly what he implemented. Morgan was fired. In addition to that, what he did is he took the two managing directors in the United States of paper and packaging, and he had them report to the group managing directors overseas. So he implemented the chart that didn't include Morgan. So for the district court to say at summary judgment that that doesn't show an intent to replace Mr. Morgan, that amounts to improperly weighing the evidence. Let me ask you this. The chart doesn't have any dates or anything on it. It's just some handwritten scribblings. What was the foundation, the evidence you introduced to establish the foundation that this chart would even be implemented by the company or was authorized or adopted or ratified by the company? Yeah, so this is, sorry, I could give you the record site. But the chart was attached to an email from Mr. Roberts to Mr. Jacobson. So the date of that was May the 10th, 2019. And it says, Thomas, I attach a hand-drawn organization structure of the current organization and the future organization. I mean, you read that sentence and it sounds like the decision is already made. It's also interesting and noteworthy that this chart wasn't provided to Mr. Morgan. He only sent it to his younger intended replacement. So, you know, we certainly think this is the type of evidence at the summary judgment stage that the jury could look at and conclude that the decision was already made. Additional evidence... You read that the decision was made to fire him and then he was lulled into staying on with this, you know, bonus and positive words or whatever. Well, so... I'm trying to get at what exactly, what's the game plan of the company here from your perspective, what you would argue to the jury. Yeah, Mr. Roberts intended to replace Mr. Morgan with a younger managing director. So D.S. Smith acquired this company, Interstate, in 2017. Mr. Morgan was already serving as the president in North America of Interstate. So arguably, Mr. Roberts hired him, but, you know, basically he just kept him on to transition. Now, part of the discussions, and this is all in the record and negotiations, were that D.S. Smith had a compensation structure where they paid their executives with equity. Equity that would vest over time. And, you know, Mr. Morgan had this change of control provision in his contract where he only had to stay on for three months and then he could exercise it and retire. And so the negotiations in that case were, you know, look, you're trying to pay me my performance bonuses in equity. I'm not, you know, I'm not sure about that. You know, I've got this change of control provision. And so they said, hey, we'll extend it two years to this date, August 25th, 2019. And this goes to the fraud claim. It's very clear, the conversation they had on July 18th, 2019, that Mr. Morgan was asking Mr. Roberts, hey, should I retire? I have this, you know, expiring provision. Right? And if, you know, if I exercise it, right, I'm going to be treated as a good lever. I'm going to vest in this equity. And Roberts very clearly concealed the fact that he was planning on replacing him with Jacobson. He drew the organizational chart. You know, Jacobson testified. Roberts was constantly trying to get him to accept a job in North America. So, you know, in terms of this being like a summary judgment case where you can look at the evidence in the record and say, as a matter of law, there's no way the jury could conclude this was fraud, this was age discrimination, that's simply not the case. It's not a straightforward decision. And at summary judgment, the court has to let, you know, the jury decide, right, are there reasonable inferences that can be drawn from the evidence? And, you know, Mr. Morgan had a prima facie case, and there's a lot of evidence. Remind me of something. I'm embarrassed I can't totally remember. So for the sake of argument in a case, you have prima facie satisfied. Then the employer says, here's why we did it. Things were not going well. We had to change at the top, whatever. When you get into the pretext debate at summary judgment, is the question, is there a triable issue of fact that the employer's reason was not the real reason? Or is the question, is there a triable issue of fact that the employer's reason was not only not the real reason, but it shows age discrimination? In other words, does the pretext argument have to be prohibitive of age discrimination or just prohibitive of I'm not buying it? It's a good question, Your Honor. And I think it's the Blair versus Henry Filters case, Sixth Circuit case, which adopts the standard United States Supreme Court standard in Reeves, which basically says you don't have to prove the ultimate question. You just have to create a jury question. No, no, no. But that's my point. Is it going to a debate about whether the pretext is showing age bias, age animus? Or is it just, hey, they've given us one reason. I've shown that can't be the reason or there's a jury issue of fact whether that was the reason. And it doesn't matter whether that little debate has anything to do with age. It's the former. The prima facie case evidence is enough, along with evidence to cast doubt on the employer's proffer explanation. And I take it you don't have any evidence here of age discrimination other than the fact that he's been replaced by a younger worker. There's not like any statements or anything that you're pointing to to say that they were discriminating based on his age. We introduced additional evidence in the lower court of disparate treatment of Mr. Morgan. For example, how the younger replacement, Mr. Ledbetter, was treated after he was terminated. So there's some evidence, Jacobson and Ledbetter, when they left the company, they were treated as good leavers and Mr. Morgan was not. There's also the evidence of at the time of the reorganization in October of 2019, where Mr. Morgan was terminated, there were four other managers, executives in North America over the age of 60 that were terminated at that time. So there is additional circumstantial evidence of age, but there isn't any comments from Mr. Roberts that reflected an age bias. There are also credibility issues that go to Mr. Roberts' testimony that we've mentioned in the brief and they go to the heart of the issue in the case. For example, the alleged performance problems for Mr. Morgan. He testified that Mr. Flierman, another manager, had performance concerns about Mr. Morgan. Mr. Flierman denied that. Okay, thank you. We'll hear from your side and you'll get your rebuttal. Mr. Hill. All right. May it please the Court. My name is Vernon Phillip Hill and I appear today on behalf of the Appellee Interstate Resources, Inc. Obviously, I ask the Court to affirm the grant of summary judgment here. I first want to discuss there's some hurdles that Mr. Morgan has to get over before we get to that pretext analysis, and I think they go to some of the Court's questions here today. One is the proving of a prima facie case. I want to go to that fourth element, that replacement element that was discussed. He's got to show that he was replaced by someone outside of his protected class or that Interstate treated similarly situated non-protected employees more favorably. He discussed that as well. The law of the circuit says a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties. That's exactly what happened here. Interstate's CFO, Keith Ledbetter, was in fact given a $50,000 bonus to take on Morgan's previous responsibilities in addition to retaining his CFO responsibilities. This doesn't constitute replacement. When we go to the favorable treatment, or alleged favorable treatment, that is, Mr. Morgan has to show that he was subjected to different treatment than persons that were similarly situated in all relevant aspects. That means the others were engaged in substantially identical conduct. He's got to show it was the same supervisor. He's got to show that it was the same standards, that the same conduct, without mitigating or differentiating circumstances, would distinguish that conduct or the employer's treatment of them. That hasn't happened here, Your Honors. Are you still on prima facie? I am. Okay, just to be sure. Exactly. Yes, Your Honor. We've got Mr. Jacobs and Mr. Ledbetter. Those are the comparators here. They're not similarly situated to Mr. Morgan. First, they weren't terminated for performance. We state many other reasons in our brief, just to save some time. But more importantly, Interstate's EBITDA didn't decline by $6.5 million in a mere six-month period of time under their watch, as it did with Mr. Morgan. There's another hurdle Mr. Morgan's age claim has to get over before we get to pretext, and that's he's failed to show but-for causation. The United States Supreme Court case in Gross, specifically— Maybe slow down just a little bit. I'm sure these are good points, but I just want to make sure I'm hearing them. My apologies, Your Honor. I've heard that many times in my life, as you can imagine. He's got to show that age was the but-for cause of his termination. In this court in Pelcha, it's stated that this is no simple task, because it's not. He's got to show that his age was, and I quote, the determinative reason for termination. So now you're getting into the pretext debate? Your Honor, I'm still in prima facie here, only because— Oh, excuse me, I'm not in prima facie. I'm in but-for causation before he ever gets there. My apologies, because this is a hurdle he's got to get to, I think, before we can even get to the pretext issue. But why isn't that bound up in pretext? I mean, that's, I thought, what pretext went to. It could be, but I think what I'm trying to go to here is that by his own admission, he admitted to OSHA, filed a complaint to OSHA, I was terminated for complaining to management about material misstatements in the company's financial reporting. He also admitted at his deposition he was terminated because of his national origin. That helps you, that he's a whistleblower? Because of those reasons, he hasn't proven by a preponderance of the evidence that age was the but-for cause of his termination. That's fraud. We'll address the fraud issues here. I know, but I'm just trying to, I'm scratching my head that this is helping you. It is because age has to be the but-for cause of his termination. That's required under ADEA. Can't you argue in the alternative? I mean, if he's got a fraud claim and the fraud claim is premised on whistleblowing and he says to the government, hey, here's what happened, that's not mutually exclusive to the same company getting rid of 40 and older workers. Quick correction there, Your Honor. His fraud claim is not based on whistleblowing, just as an aside. That's not it. So that's a separate issue. But, Your Honor, he hasn't proven but-for causation as a result of that, and I think that's a bigger hurdle he's got to get to. But getting to pretext, if the court gets there, this court's pretext analysis, it can make the same actor inference here. This court in Nylon v. Cincinnati said that the same actor inference can be made at the summary judgment stage, and that allows this court to infer a lack of discrimination from the fact that the same… Can the same actor spell that out a little more? Absolutely. It allows the court to infer a lack of discrimination based on the fact that the same individual both hired Mr. Morgan and both fired him. So here it's undisputed that Mr. Roberts was that person. It's undisputed that Mr. Roberts knew how old Mr. Morgan was when he hired him, knew how old he was when he fired him. Are cases say that's dispositive as opposed to a relevant factor? It's not dispositive. I will make that clear. Okay, well then why would that make a difference at summary judgment? Well, because it is an inference that can be made to help show that there is no discrimination. Just so you understand what I'm saying. Once you're in the world of inference granting or denying, you're usually in a world where summary judgment's not appropriate. Well, Your Honor, I think what he's trying to do is trying to convince this court that there is an inference of a pretext, but this same actor inference allows the court to infer that there was no such inference of discrimination, and that's why it's important here. Counsel, what you have here is a long-term employee in Plano and the employer apparently was satisfied with his performance for many years, and now they decide to let him go based upon deficient performance. Is that right? Quick correction with that. What I wanted to ask you is what evidence did you have or did you submit to show that the plaintiff's performance declined or changed such that now he was a deficient performer in his responsibilities, whereas for many years apparently the employer was satisfied with his performance. Of course, the plaintiff says that the declining performance of the company financially was due to conditions beyond his control. So what evidence did you submit that somehow the plaintiff's performance became deficient? Well, Your Honor, quick correction only to that last statement with respect to him being a long-time employee. D.S. Smith acquired the interstate business in 2017. That is when Mr. Roberts of D.S. Smith came in and made the decision to hire Mr. Morgan in 2017. So he only worked for D.S. Smith for a period of time. But the new owner of the company had an opportunity to evaluate the performance of key employees before they acquired the company or in the process of the acquisition. So taking the facts and circumstances and the like most favorable to the plaintiff as plaintiff, I guess my question stands is what I'm saying. Absolutely, Your Honor, and I think this goes to this first standard of proof when we get to the pretext analysis here that can be used to prove those. And what that is there is that there's no basis in fact for his termination. Mr. Morgan can't prove that there was no basis in fact for that termination because I didn't ask what he could prove. I asked what evidence did you submit that his performance had declined, which gave rise to these performance problems or concerns that led to his termination. Your Honor, that's what I'm getting to, and I'm glad you asked. So these are undisputed facts that he can't avoid here. And that's he admitted he's the highest-ranking employee for interstate in North America. He admitted he oversaw the NAP business. He admitted he's ultimately responsible for NAP's performance. Well, I'm having a hard time making myself understood, but I'm asking you what evidence did you submit that indicated that his performance declined such that he should be terminated. That's my next two points. You're exactly right. He admitted that NAP failed to meet financial forecasts that he drafted for ten months in a row. Judge Clay said how did they company tell him he was underperforming such that he might get fired? Your Honor, there's a text message that Mr. I believe Robert sent to Mr. Morgan that specifically said he saw a drop in the monthly forecast by $4 million and said, hey, this is a problem. That's one example of one of those things. But getting back to what I mentioned, he failed to meet these forecasts that he drafted. He continually redrafted those forecasts so they always kept going down. But it's undisputed here that NAP lost over $6.5 million in EBITDA in just a mere six months. He was ultimately responsible for those shortfalls in those ultimate numbers. So we've cited an extensive amount of that undisputed evidence. In fact, the lower court did as well. So he hasn't demonstrated that the reason for his termination never occurred or was factually false. And the court does not have to ignore those undisputed facts in this case. Now, getting to this second factor, I just wanted the court to note that the second standard of proof, well, going back actually to that first one, I just wanted to note that it appears that Mr. Morgan's briefing tends to blur these standards of proof between that first and second prong to prove pretext. And I think he's trying to avoid having to prove what's actually required to meet them and to avoid those evidentiary restrictions that's on what is permitted to meet them. So, for example, he's trying to avoid the application of the honest belief rule by essentially arguing, by characterizing all of his arguments as under the second prong of a motivation factor. But when we get to that second prong, and that's that the proffered reason didn't motivate the termination, it's not available to Mr. Morgan. The black letter law in this circuit is that as the plaintiff does not admit the factual basis underlying the defendant's proffered explanation, she cannot use this method to show pretext. There's not a doubt here. Plaintiffs continually argue in their motion for summary judgment and in their appellate briefs that his performance was not poor, so they cannot avail themselves of this second method of showing pretext. So on top of that, on that same method, they can't use their prima facie evidence to satisfy that second standard of proof. That's in the Miles case from 2020. There's also a couple of cases that this court affirmed, the Lynch case and also the Carter case. But I want to move on to a couple more of these points that Mr. Rule brought up. And the first is this bonus. First of all, with respect to this public praise and the bonus, there's some issues there. Because Mr. Morgan's poor performance started in January of 2019, so any poor performance that happened before then, it's not relevant here. But the only post-January 2019 evidence that Mr. Morgan cites is just a standard form letter in July of 2019 that went out with D.S. Smith's worldwide annual bonus plan. Now, mind you, with respect to that bonus that Mr. Morgan was on, it's not based on Mr. Morgan's individual performance. It's also not based on North America's performance. It's based on D.S. Smith's worldwide performance as a group. And that bonus only covered a period of May 1st, 2018 through April 30th, 2019. There's no merit component to it? No, it's solely based on the performance as a whole of the group. And that'll be evident here in just a moment, Your Honor, because that letter just stated, the North American business we acquired continues to perform well. Well, Mr. Rule argues, well, you gave me a bonus. You could have deducted from my bonus if my performance was poor. Well, they're ignoring the fact that eight out of those 12 months for which that fiscal year upon which the bonus was based, Knapp's performance wasn't at issue. It was only four months of that. And quite honestly, they hoped Mr. Morgan would turn it around. But the employees that were on a separate bonus plan that was contingent solely on North America's performance, they got nothing. And Mr. Morgan outlined in an email all the ways that they did not meet those performance targets. But the next year when that worldwide bonus plan was considered, no employee got a bonus because none of the performance criteria were met because all of Knapp's poor performance was included in that. So I wanted to mention that about the praise and the bonus. With respect to the hand-drawn chart, I know I wanted to talk about that as well here. That hand-drawn chart, it does not even remotely discuss the termination of Mr. Morgan, nor does it demonstrate his intention to terminate Mr. Morgan. And Judge Clay, I know you'd mentioned, you'd asked about the adoption or the ratification of this chart. This was simply just a hand-drawn chart that was sent to Mr. Jacobson, who was sent from Europe to America to try to analyze what was going on with the Knapp business. Why was it performing so poorly? It was just to kind of try to help figure out what's going on, what could be changed. The chart demonstrates nothing more than Mr. Roberts' hope to restructure Knapp's management. So the idea that this chart somehow helps prove pretext is nothing more than a personal belief, it's speculation, it's conjecture, that's insufficient to support an inference of discrimination here. I know another piece of evidence that was discussed was this Me Too evidence. That is absolutely not applicable on summary judgment. That's recognized by the McGeer-Vern case, which this court affirmed in 2013. I want to move on to those fraud claims. Your Honor, essentially, the fraud claims are essentially based on the fact that he claims Mr. Roberts somehow convinced him to stay past his change in control date, and that was in August of 2018. Well, he claims these conversations occurred in July. Well, the problem with this is, is the whole theory that they're alleging here is undermined by the fact that there's a separate agreement that's an employee retention agreement. That change in control date has the exact same date that Mr. Morgan has to be retained by in order to get a $455,000 bonus. So he had a choice. He could retire, and he claims he could try to get Good Lever, which he couldn't. Those Good Lever shares were only worth $140,000. Had he retired, he would have lost his $455,000. Instead, he chose to stay employed so he got the retention bonus and had the opportunity for the shares to vest. He claims that this retention bonus was to be paid by the Frimm family who sold the business to D.S. Smith. The problem is there's no affidavits from Mr. Frimm. There's no testimony from Mr. Frimm. There's nothing more but Mr. Morgan's own speculation that Mr. Frimm would somehow pay this retention bonus if he did not stay past this August 25th change in control date. So I thank you so much, Your Honors. Thank you. Mr. Rule, you've got three minutes. The majority of counsel's time at argument was spent arguing the sufficiency and weight of the evidence, and that's precisely our point. At summary judgment, Mr. Morgan has to get the benefit of those inferences. How do we say you met the prima facie case in terms of the replace-by requirement? This isn't a typical case, I must say, on that point. Yeah. Eliminate the position. The position wasn't eliminated because Mr. Ledbetter filled the position. Filled some of the responsibilities. Well, we're— I mean, it's rare that there's such a thing as position was there day one and day two, it just vanished. Like, not a single responsibility that that person was doing is done by someone else. That's—because that looks very strange. Like, why were you having someone do it? So isn't this just a typical thing where you've decided we're having problems, let's deal with some of the problems on the cost side, eliminate the position, have other people handle it? I think— Weren't there, like, four people that ultimately did the responsibilities? No. They weren't shared? No, in terms of the NAP CEO, the overall head CEO job was performed by Mr. Ledbetter. But I think why the district court concluded there was a prime facie case, not just the fact that Mr. Ledbetter was chosen as a temporary replacement, temporary when he served in the position for two years, but it's the overwhelming evidence that Roberts wanted Jakobson. I mean, that's all throughout the case, and Jakobson repeatedly turned him down. And the jury doesn't have to ignore that when they're looking at, okay, did Mr. Roberts make an attempt to replace him with someone younger? So it's the repeated attempts to get Mr. Jakobson to fill the job, when Jakobson turned him down, he put the younger Ledbetter in that position. So in terms of, like, the low burden at summary judgment, and could a jury ultimately find in favor of Mr. Morgan on age discrimination? Absolutely. Absolutely there's sufficient evidence in the record. And just, again, with respect to his burden at this stage of the case, Judge Clay's Brewer v. New Era case was an age and race discrimination case. It's cited in our briefs. It's a reversal of summary judgment. That goes through the analysis of the Blair v. Henry Filters case, which the circuit adopted the Reeves rationale at summary judgment. And it clearly holds that the prime facie case, along with sufficient evidence to rebut, not disprove, the articulated reason is sufficient. We believe the district court erred, did not properly weigh the evidence as required in Mr. Morgan's favor, and that the decision should be reversed. Thank you. All right, thank you. I appreciate your briefs and oral argument. The case will be submitted.